# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:19-CR-719-S2** |
| | § | |
| **WILLIAM ANDREW DELBOY,** | § | |
| **Defendant** | § | |

## PLEA AGREEMENT

The United States of America, by and through Jennifer B. Lowery, Acting United States Attorney for the Southern District of Texas, Kimberly A. Leo and Sherri L. Zack, Assistant United States Attorneys, and James E. Burke IV, Trial Attorney, Child Exploitation and Obscenity Section, and the defendant, William Andrew Delboy ("Defendant"), and Defendant's counsel, Larry Eastepp, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Counts 1 and 2 of the Second Superseding Indictment. Count 1 charges Defendant with **Conspiracy to Receive and Distribute Child Pornography**, in violation of Title 18, United States Code, Sections 2252A(a)(2) and 2252A(b)(1). Count 2 charges Defendant with **Conspiracy to Advertise Child Pornography**, in violation of Title 18, United

States Code, Sections 2252(d) and (e).   Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2.   The statutory maximum penalty for each violation of Title 18, United States Code, §§ 2252A(a)(2) and 2252A(b)(1), is a term of imprisonment of not less than 5 years and not more than 20 years and a fine of not more than $250,000.00, unless the Defendant has a prior conviction for a sexual offense, in which case the range of imprisonment is not less than 15 years and not more than 40 years.   The statutory maximum penalty for each violation of Title 18, United States Code, §§ 2251(d) and (e), is a term of imprisonment of not less than 15 years nor more than 30 years and a fine of not more than $250,000.00, unless the Defendant has a prior conviction for a sexual offense, in which case the range of imprisonment is not less than 25 years nor more than 50 years.   Additionally, under both Counts 1 and 2, Defendant may receive a term of supervised release after imprisonment of no less than 5 years and up to life.   See Title 18, United States Code, sections 3559(a)(3) and 3583(k).   The Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of

2

supervised release, without credit for time already served on the term of supervised release prior to such violation. See Title 18, United Stated Code, sections 3559(a)(3) and 3583(k). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3.    Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

4.    Pursuant to Title 18, United States Code, Section 3014(a)(3), if the court determines

that the Defendant is a non-indigent person, the Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of five thousand dollars ($5000.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District clerk's Office, P.O. Box 61010, Houston, TX 77208, Attention: Finance.

## Immigration Consequences

5.   Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future.   Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

## Waiver of Appeal and Collateral Review

6.   Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed.   Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final.   Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255.   In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence,

4

the United States will assert its rights under this agreement and seek specific performance of these waivers.

7.  In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.  Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court.  The United States does not make any promise or representation concerning what sentence the defendant will receive.  Defendant further understands and agrees that the United States Sentencing Guidelines are effectively advisory to the Court.  *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

8.  Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

5

## The United States' Agreements

9.   The United States agrees to the following:

(a)    If Defendant pleads guilty to Counts 1 and 2 of the Second Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss the First Superseding Indictment at the time of sentencing; and

(b)    If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas and the Child Exploitation and Obscenity Section Only

10.   The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the second superseding indictment.   This plea agreement binds only the United States Attorney's Office for the Southern District of Texas, the Child Exploitation and Obscenity Section and Defendant.   It does not bind any other United States Attorney's Office.   The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

11.   The United States reserves the right to carry out its responsibilities under

guidelines sentencing.   Specifically, the United States reserves the right:

(a)   to bring its version of the facts of this case, including its evidence
file and any investigative files, to the attention of the Probation Office
in connection with that office's preparation of a presentence report;

(b)   to set forth or dispute sentencing factors or facts material to
sentencing;

(c)   to seek resolution of such factors or facts in conference with
Defendant's counsel and the Probation Office;

(d)   to file a pleading relating to these issues, in accordance with
section 6A1.2 of the United States Sentencing Guidelines and Title 18,
United States Code, section 3553(a); and

(e)   to appeal the sentence imposed or the manner in which it was
determined.

## Sentence Determination

12.   Defendant is aware that the sentence will be imposed after consideration

of the United States Sentencing Guidelines and Policy Statements, which are only

advisory, as well as the provisions of Title 18, United States Code, Section 3553(a).

Defendant nonetheless acknowledges and agrees that the Court has authority to

impose any sentence up to and including the statutory maximum set for the

offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is

within the sole discretion of the sentencing judge after the Court has consulted the

applicable Sentencing Guidelines.   Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge.   If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

13.   Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

(a)   If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)   At a trial, the United States would be required to present witnesses and other evidence against Defendant.   Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them.   In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf.   If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)   At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be

drawn from such refusal to testify.   However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

14.   Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts 1 and 2 of the Second Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts,[1] among others, would be offered to establish the Defendant's guilt:

a.      On May 31, 2017, Homeland Security Investigations ("HSI") Special Agent ("SA") Joshua Conrad created the undercover online identity (hereafter "UC1") to access client-server protocol (hereafter "Protocol A") chat rooms hosted on a Protocol A network, "Network 1." Protocol A networks are applications that facilitate communication by text. Protocol A chat rooms are mainly designed for group communication in discussion forums but can also be used for private, one-on-one communications, data sharing, and file sharing.

b.      SA Conrad used this undercover online identity to join and access multiple Protocol A Network 1 chat rooms, all of which were forums for potential

---

[1] All network, user, and chat room names have been anonymized to protect the ongoing investigation.

targets interested in engaging in sexual activities with minors and/or trafficking in sexually explicit depictions of minors.

c.    While SA Conrad was logged into Chat Room 1 on the Network 1 server, SA Conrad observed a user, later identified as Charles McCreary, Jr., posting links to third-party file-sharing sites that lead to images of children engaged in sexually explicit conduct. McCreary's username, or nickname, was indicative of a sexual interest in children. McCreary also had chat room administrative rights for Chat Room 1. Other users in the chat room could see McCreary's username.

d.    Protocol A has two tiers of administrators, a higher tier and a lower tier. The lower tier administrator has the ability to manage and control issues at the chat room level. The higher tier administrator has the ability to manage and control users and issues at the network level. While on Network 1, McCreary was a member of the lower tier. McCreary also had a bot—a computer program that performs automatic, repetitive tasks—set up to automatically post a third-party link every minute to the Chat Room 1 chat room, the majority of which lead to a third-party sites containing an image or video of prepubescent minors engaging in sexually explicit conduct.

e.    While SA Conrad was logged into Chat Room 1 on the Network 1 server, another user, later identified at Christopher McIntosh, posted links to third-party file-sharing websites that lead to images of children engaged in sexually

explicit conduct. This user also had chat room administrative rights for Chat Room 1. Other users in the chat room could see this user's username.

      f.     While SA Conrad was logged into Chat Room 1 on the Network 1 server, another user, later identified as Jason Brown, changed chat room modes for other users, which indicated this user too had chat room administrative rights for Chat Room 1. This user posted links to third-party file-sharing websites that led to images of child erotica. Other users in the chat room could see this user's username.

<u>Transition from Network 1 to Network 2</u>

      g.     Protocol A's network moderators, or administrators, are charged with the task of enforcing a particular network's rules and, in many cases, improving the network in various ways. Network 1, as one of Protocol A's largest networks, had an active moderator group dedicated to public safety. In or about July 2018, several Network 1 public safety administrators began banning Network 1 chat rooms focused on depictions of children engaged in sexually explicit conduct, including the aforementioned Chat Room 1. On or about July 26, 2018, a post was made to a public website informing users of a new, private Protocol A server, known as "Network 2," and giving instructions on how to access it. The post discussed how Network 2 was a private Protocol A network offering a secure encrypted connection between a server and a web browser, the ability to mask a user's IP address information, and

the ability to register a unique username. The post then provided detailed instructions on how to set up and access Network 2 on a user's Protocol A client.

h.      Around the time the Network 1 administrators began eliminating chat rooms dedicated to trafficking in depictions of children engaged in sexually explicit conduct, many of the most active users, including McCreary, McIntosh, and Brown, migrated from Network 1 over to the newly-created Network 2. Many of the chat rooms dedicated to trafficking in child sexual exploitation material that had been banned on Network 1 were recreated on Network 2 shortly after it was created. Many of the administrative users then created user names for Network 2 that were very similar, or identical, to those they'd used on Network 1.

i.      On September 28, 2018, SA Conrad logged onto Network 2 and observed the network's welcome message, which listed the "Staff Members" associated with the network. Another user, later identified as the Defendant, was listed as a "Network Administrator and Web Admin" for Network 2.

j.      On or about January 29, 2019, in the Eastern District of Pennsylvania, SA Conrad was logged onto Network 2 in an undercover capacity and accessed "Chat Room 1" (a recreation of Chat Room 1 on Network 1) on that network. Chat Room 1 on Network 2 was primarily dedicated to trafficking in links to third-party sites that lead to images and videos of prepubescent minors engaged in sexually

explicit conduct. At approximately 17:05 hours ET on or about January 29, 2019, the Defendant was logged into Chat Room 1 on Network 2.

k.    On or about February 11, 2019, at approximately 09:08 hours ET, the Defendant was logged into Chat Room 1 on Network 2. While the Defendant was logged in, McCreary posted a link which lead to an image of a prepubescent female naked from the waist down being vaginally penetrated by an adult male's penis. At approximately 09:09 hours ET, McCreary then posted a link to another image of a prepubescent female performing oral sex on an adult male. These links would have been available to any user logged onto Chat Room 1 on Network 2 at the time, including the Defendant. SA Conrad downloaded these images for evidentiary purposes.

<u>Transition from Network 2 to Network 3</u>

l.    On or about February 19, 2019, at approximately 10:48 hours ET, in the Eastern District of Pennsylvania, SA Conrad logged into the Network 2 server in an undercover capacity. SA Conrad noticed that there were significantly fewer users logged in to Chat Room 1, typically the most populated, than he had observed during prior undercover sessions. At approximately 10:55 hours ET, a post was made to Chat Room 1 which stated the following, "We would like to inform everyone that [Network 2] will be closing soon for technical reasons. We invite everyone to join us at our new server," and then listed precise technical instructions for joining a new

13

server named "[Network 3]". SA Conrad accessed Network 3 using the given instructions and thereafter observed a welcome screen for Network 3 that emphasized its lack of content oversight. The welcome screen also listed the Defendant as a "Network Admin" for Network 3, which means that the Defendant would have administrative rights on Network 3.

m.      On August 28, 2019, a federal search warrant was executed in Houston, Texas, at the residence of Charles McCreary, Jr. At that time, McCreary admitted to being a user and administrator on Networks 1, 2, and 3. The investigation revealed that McCreary was the main operator and creator of Chat Room 1 on all three networks. During the time McCreary was involved in these conspiracies, he was residing in the Southern District of Texas.

<u>Identification of the Defendant</u>

n.      In the course of this investigation, SA Conrad learned that the Network 1 public safety moderators collect information about each Protocol A subscriber on the network that registers a username. They collect the user name, signup date and time, email address at the time of registration, registration IP address, last seen date and time, and most recent IP address. On or about March 4, 2019, SA Conrad issued a summons to the Network 1 public safety moderators for subscriber information pertaining to the Defendant. One of the members responded with the following subscriber information :

14

User Name: [xxx]
Associated Email Address: andrewismyemail@mailtor.net
Last IP Address: 2001:470:7857:2063::f
Last Seen: 6 days, 04:41:20 ago (9/22/2018, 09:14:23)
Signup Time: May 19, 2014 at 23:59:15 ET
Signup IP Address: 78.20.55.18

o.     On or about August 28, 2019, HSI Special Agents executed five search warrants, virtually simultaneously, on five individuals who acted as either moderators or network administrators for Network 2 and Network 3, including Charles McCreary. During the interview of McCreary that occurred after his arrest on August 28, 2019, McCreary explained to law enforcement how the network was paid for and operated: McCreary was responsible for paying for the Network 3 domain name, and the Defendant was responsible for purchasing the server space for, configuring, and setting up Network 3. Following the arrest of McCreary, the website went down because McCreary was not able to pay to retain the domain name. At that time, the Defendant publicly explained to users on Chat Room 1 on Network 3 that the network was having technical difficulties and that the administrators needed contributions via Bitcoin in order to renew the Network 3 name license. Chats in Chat Room 1 described how the Defendant was responsible for ensuring the repayment to the Domain Name Registrar for the use of the Network 3 name. UC1 chatted with the Defendant at the time, who informed UC1 that he had

received Bitcoin from another user and Network 3 operations should be normalized shortly.

p.   During a search of the home of another of those individuals arrested, Jason Brown, law enforcement seized several devices containing evidence related to the child sexual exploitation offenses occurring on Protocol A networks. The investigation revealed that Brown was a network administrator for Network 2 and Network 3. One of the devices seized from Brown's home yielded network administrator log files for Networks 2 and 3 that documented, among other things, chat conversations between users, including the Defendant and Brown, as well as other user data that would later be used to help identify the Defendant's real-world identity.

q.   The investigation revealed that network administrators for Networks 2 and 3 created several chat rooms that were only accessible to network administrators. The network administrators used these administrative chat rooms to assist them in monitoring the networks, the various chat rooms, user data, and any requests from other network users. "Network Admin Chat Room 1" is a chat room that existed on both networks that allows the network administrators to have group chat conversations among themselves. A second such chat room, "Network Admin Chat Room 2," is a chat room that existed on both networks that allows the network administrators to monitor when users join or quit the network or a particular chat

16

room within it. Network Admin Chat Room 2 also keeps a log of the true IP addresses of the users logging in—that is, the IP address that corresponds to that user's actual physical location (unless the IP address is disguised). A third such chat room, "Network Admin Chat Room 3," that existed on both networks, allows the network administrators to monitor and respond to help requests made by regular network users.

r.     During SA Conrad's review of the network administrator logs seized from Brown's devices, he discovered chat conversations that occurred between the Defendant and Brown on Networks 1, 2, and 3. During the course of the chat messages, on or about June 19, 2018, the Defendant informed Brown that his middle name is "Andrew" and that his first name is "William." On or about February 14, 2019, during these chats, the Defendant also informed Brown that his last name is "Delboy" and that he currently lives in Australia. The Defendant also told Brown that he has a United States passport, that he used to live in Texas, and that he has to annually report to Australian law enforcement because of a previous sex offense involving a minor.

s.     Agents conducted a public internet search and found a William Andrew DELBOY, namely the Defendant, who used to live in Beaumont, Texas, and who had a date of birth of December 27, 1971.

17

t.      Agents conducted a search of a law enforcement system that collates known law enforcement subject records as well as international travel information for a William Andrew DELBOY with the date of birth December 27, 1971, and found a match. According to the database records, the Defendant, a United States citizen, was convicted of child pornography offenses in Australia on August 24, 2011, and was sentenced to 18 months in prison. The Defendant is a sex registrant in Australia.

u.      SA Conrad contacted HSI Canberra to inquire about the Defendant, which provided the following information: the Defendant was arrested in Victoria, Australia, and was charged by the Australian Federal Police in 2010. On August 24, 2011, the Defendant was convicted in Victorian County Court in Victoria, Australia, of the following: use of a carriage service for child pornography material (2 counts); use of a carriage service to transmit, make available, publish, distribute, advertise, promote child pornography; use of a carriage service to "groom" a person under 16 years; and possess/control/produce/supply/obtain child pornography material for use through carriage service. Based on his convictions, the Defendant is required to register as a sex offender on the Australian Child Protection Register for life.

v.      Following the arrest of McCreary on August 28, 2019, some of the users within Chat Room 1 on Network 3 expressed concern about McCreary's disappearance. On September 19, 2019, one of the users in Chat Room 1 said User

1 was logged on Chat Room 1 last week and that McCreary had stated that he had to make an emergency announcement. The Defendant informed the users on Chat Room 1 that the user posing as McCreary was in fact a troll, not McCreary. The Defendant then stated, "whether (McCreary) 'got taken or no' we're still here." The Defendant then updated the "Welcome Message" to Chat Room 1 to read, "Welcum to [Chat Room 1]! Post what you like! Thank your posters! We are here to stay. Remember our chat client."

w.     Law enforcement learned that the Defendant was scheduled to fly from Australia to George Bush Intercontinental Houston Airport ("IAH") in Houston, Texas, on or about March 7, 2020. SA Conrad obtained a federal search warrant for the Defendant's electronic devices.   The Defendant did in fact arrive in Houston on March 8, 2020. He was arrested at the airport, given his *Miranda* warnings, and interviewed. In the course of his interviews, he admitted that he had a sexual interest in young girls from eight years old up to early teenagers. He admitted that he was a user on Networks 2 and 3, an administrator on Network 2, and the server administrator for Network 3. He admitted that he was tasked with making sure Network 3 was running and patched.

x.     At the time of the Defendant's arrest, the Defendant was traveling with a Lenovo YOGA Laptop S/N: S466NX0K815672D; a Verbatim Thumb Drive (4 GB); a SanDisk Cruzer Blade Thumb Drive (4 GB); and an Apple iPhone 6s S/N:

FK5QM2BFGRYF. Agents executed a federal search warrant on those devices and found that the Defendant had been logged into some of the child exploitation chat rooms on Network 3 along with the administrator chat rooms.   Agents further found chat logs for Network 3, some material containing the Defendant's username and 31 web links. Some of these web links were still active and led to videos of children engaged in sexually explicit conduct. Additionally, there were several Tor hidden service links, which led to a pedophile support group blog and to images and videos of children engaged in sexually explicit conduct.

     y.    The Defendant's participation in these conspiracies was conducted via the Internet, a means and facility of interstate and foreign commerce. All networks and chat rooms were accessed via the Internet.

## Breach of Plea Agreement

15. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution, Forfeiture, and Fines – Generally

16. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

17. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14

days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18.   Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his/her assets to deliver all funds and records of such assets to the United States.

19.   Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

20.   Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred a monetary loss in an amount to be determined either before sentencing or within 90 days of the sentencing hearing.

Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s).   Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

### Forfeiture

21.   Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.   In particular, but without limitation, Defendant stipulates that the following specific property is subject to forfeiture:

a Lenovo YOGA Laptop S/N: S466NX0K815672D;

a Verbatim Thumb Drive (4 GB);

a SanDisk Cruzer Blade Thumb Drive (4 GB); and

a Apple iPhone 6s S/N: FK5QM2BFGRYF.

22.   Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

23

23.   Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

24.   Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

## Fines

25.   Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Notification of the Sex Offender Registration and Notification Act

26.   Defendant has been advised, and understands, that under the Sex Offender Registration and Notification Act, a federal law, he must register and keep the registration current in each of the following jurisdictions: where he resides; where he is an employee; and where he is a student.   The Defendant understands that the requirements for registration include providing his name, his residence

24

address and the names and addresses of any places where he is or will be an employee or a student, among other information.   The Defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three (3) business days after any change of residence, employment, or student status.   Defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

## Complete Agreement

27.   This written plea agreement, consisting of 28 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

28.   Any modification of this plea agreement must be in writing and signed

by all parties.

Filed at _Houston_, Texas, on _June 10, 2021_,

2021.

_____
Defendant

Subscribed and sworn to before me on _June 10_,

2021.


NATHAN OSCHNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
~~Deputy United States District Clerk~~

APPROVED:
JENNIFER B. LOWERY
Acting United States Attorney


By: _____        _____
Kimberly Ann Leo                    Larry Eastepp
Assistant United States Attorney    Attorney for Defendant
Southern District of Texas

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:19-CR-719-S2** |
| | § | |
| **WILLIAM ANDREW DELBOY,** | § | |
| **Defendant** | § | |

### PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his/her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____        _____
Attorney for Defendant                                 Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me.   My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.   I have read or had read to me and carefully reviewed every part of this plea agreement with my attorney.   I understand this agreement and I voluntarily agree to its terms.


_____   _____
Defendant                                   Date

28